**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARYLON M. BOYD, EXECUTOR OF THE
ESTATE OF CAMMERIN BOYD,

           Plaintiff,

  v.

ALAMEDA COUNTY, et al.,

           Defendants.

_____/

No. C 02-02461 SI

**ORDER RE: SUMMARY JUDGMENT
MOTIONS**

On July 29, 2005, the Court heard oral argument on plaintiff's motion for summary judgment and motions for summary judgment brought by defendants. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby DENIES plaintiff's motion and GRANTS defendants' motions for the reasons set forth below.

**BACKGROUND**

This lawsuit arises from events occurring while decedent Cammerin Boyd ("Boyd" or "decedent") was in the custody of various Alameda County and state correctional institutions between January 27, 2000 and August 26, 2001: San Quentin State Prison, Deuel Vocational Institute for Men ("DVI"), California Institute for Men ("CIM"), Pleasant Valley State Prison ("PVSP"), and Santa Rita County Jail. This action is brought by plaintiff Marylon M. Boyd, decedent's mother, on behalf of the estate of Cammerin Boyd.[1] At all relevant times, both of decedent's legs were amputated below the knee. Third Am. Compl. ¶ 6. Plaintiff alleges that, during his incarceration, Boyd was subjected to unsanitary conditions, deprived of adequate medical care,

_____

[1] Plaintiff Marylon Boyd is also counsel for plaintiff in this matter.

**United States District Court**
For the Northern District of California

housed in inappropriate accommodations for his disability, and subjected to disparate treatment, excessive force, and other statutory and constitutional violations. Id. at ¶¶ 6-8.

Decedent filed a complaint with this Court on May 20, 2002, against 41 defendants, alleging discrimination and harassment because of his race (African-American) and disability, conspiracy to deprive him of his civil rights, retaliation against him after he filed grievances and made complaints, and various state law violations. Boyd died on May 5, 2004, under circumstances unrelated to the facts of this case. On May 28, 2004, by letter to the Court and counsel, plaintiff informed the parties of the fact of Boyd's death. The Court vacated all pending dates and set a case management conference, which was set for August 27, 2004, and then continued twice thereafter. On December 14, 2004, plaintiff filed a third amended complaint against various individual and institutional defendants, including: Dr. Terry Croasdale, an independent contractor and physician at Doctors Hospital of Manteca; Doctors Hospital of Manteca ("Doctors Hospital"); Alameda County, Captain Hagan, Technican Dutton, and Deputy Burns (collectively "Alameda County defendants"); Prison Health Services, Inc. ("PHS"); and San Quentin State Prison, Deuel Vocational Institution, Pleasant Valley State Prison, California Institution for Men, and various employees and agents of these entities (collectively "CDC defendants").

In the Third Amended Complaint, plaintiff brings claims for: (1) a violation of the Americans With Disabilities Act ("ADA"), "Section 504," against all defendants;[2] (2) a violation of 42 U.S.C. § 1983; (3) a violation of 42 U.S.C. § 1985 for conspiracy to violate civil rights; (4) negligence and negligent hiring, supervision, and retention against all defendants; (5) assault and battery against individual defendants Gormans, Burns, Blanks, Dutton, Wondaso, Casey and the Doe defendants; (6) intentional infliction of emotional distress against all defendants; (7) a survival action against all defendants; and (8) a violation of Cal. Bus. & Profs. Code § 17200 against all defendants.

Now before the Court are motions for summary judgment filed by defendant Croasdale, defendant Doctors Hospital, the Alameda County defendants, defendant Prison Health Services, and the CDC defendants. Plaintiff has also filed a motion for summary judgment or partial summary judgment, apparently

---

[2] Because the ADA contains no "Section 504," the Court construes this claim as two separate claims, one brought under the ADA and the other brought under Section 504 of the Rehabilitation Act.

2

1    against all defendants.[3]

2

3                              **LEGAL STANDARD**

4           Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

5    on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

6    the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)).  The moving party bears

7    the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett,

8    477 U.S. 317, 323; 106 S.Ct. 2548 , 2553 (1986).  The moving party, however, has no burden to negate or

9    disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need

10   only point out to the Court that there is an absence of evidence to support the non-moving party's case.  See

11   id. at 325.

12          The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a

13   genuine issue for trial.'"  See Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this

14   burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the

15   material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586; 106 S.Ct. 1348,

16   1356 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on

17   which the jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S.

18   242, 252; 106 S.Ct. 2505, 2512 (1986).  In a motion for summary judgment, the evidence is viewed in the

19   light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  See id.

20   at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

21   the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  Id.

22                               **DISCUSSION**

23

24   _____

25          [3] The parties have also filed objections to one another's submissions.  Defendants object to the
     Declaration of Marylon Boyd and several attached exhibits, as well as to a Supplemental Statement of Evidence

26   and Facts in Reply to Oppositions and in Support of Plaintiff's Motion for Summary Judgment, filed July 22,
     2005, a Supplemental Declaration in Support of Motion for Summary Judgment and in Reply to Opposition

27   to Motions for Summary Judgment, filed July 28, 2005.  Plaintiff has filed objections to Evidence of Defendants
     County of Alameda, Captain Hagan, Technican Dutton, and Deputy Burns.  Because the timeliness and

28   admissibility of this evidence does not affect the Court's rulings on these motions, it does not reach the
     objections.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

## I.    Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment, apparently solely on her claim under 42 U.S.C. § 1983. Specifically, she states that "[d]efendants and each of them knew there was a substantial risk of serious harm to Mr. Boyd and thereby violated the Eighth Amendment," and that defendants exhibited deliberate indifference to Boyd's serious medical needs. Pl.'s Mot. at 1:19-20; 2:4-13. Plaintiff's motion includes a series of excerpts from the testimony of plaintiff's expert, Dr. Corey Weinstein. She also submits her own declaration ("Boyd Declaration") and a request for judicial notice ("RJN").

The factual basis for these claims appears to be Boyd's incarceration at Santa Rita Jail between March 30, 2001 and June 2001, when plaintiff alleges that defendants' failure to provide adequate care and treatment resulted in an infection to his left stump. Third Am. Compl. ¶ 6. On May 15, 2001, Boyd was transferred to Deuel Vocational Institution, where he was seen by a doctor who identified signs of gangrene and eventually diagnosed Boyd with osteomyelitis. Id. at ¶ 43. On May 29, 2001, Boyd was taken to defendant Doctors Hospital for examination, and brought there again on June 6, 2001. Id. at ¶¶ 53, 57. Plaintiff alleges that numerous abuses occurred at Doctors Hospital, including the denial of his repeated requests to contact his attorney and family; the removal his of his prostheses and constant handcuffing of both hands to his bed or wheelchair; the permanent presence of guards in his room; and the inability to obtain information about his condition or alternatives to further amputation. Id. at ¶ 58. Plaintiff alleges Boyd would not agree to surgery without first contacting his attorney or family, and so signed an "against medical advice" form and returned to DVI "in hopes of being able to have contact with his family and attorney and to obtain relief from being chained to a bed 24 hours a day." Id. at ¶ 59. On June 18, 2001, when Boyd left Doctors Hospital, he was sent to the California Institute for Men instead of back to DVI. During this time, plaintiff alleges that Boyd was denied telephone access to his family and attorney. Id. at ¶ 59. He was released from prison on August 26, 2001. Id. at ¶ 65.

Plaintiff's motion includes excerpts from the testimony of plaintiff's expert, Dr. Corey Weinstein. Dr. Weinstein testified, in relevant part, that Boyd received inadequate care at Doctors Hospital because:

> [Boyd] was spoken to at length by nurses to try to figure out how he could continue care. He was frustrated with having to be in a bed without – there are notes there about he can't make phone calls. In other words, he [had] no access to the ordinary general routines of a prison setting like – things like phones and such, sociability programs, and that he came to dispute the

4

United States District Court

For the Northern District of California

staff over this.  So that he at one time checked himself back out and said, "I just can't do this anymore," knowing well that the doctors had advised him that he needs intravenous antibiotics . . . Yet he chose at one moment to stop everything and leave.  What a difficult and horrible choice we put him in. . . So that the leader of the te[a]m, his medical care [team], as Doctor Croasdale was, had an obligation to protect his patient from adverse conditions of confinement that interfered with the patient's ability to function effectively in that setting.

Boyd Decl., Ex. 8 (Weinstein Depo.) at 44:18-45:16.

Regarding the treatment Boyd received from PHS when he arrived at Santa Rita Jail, Weinstein stated:

not only did PHS institute a treatment regimen which was superficial, based on negligent and superficial examination, but compounded the problem by not doing the required two-week history and physical by a qualified medical examiner at which that might have come up again . . . Is there a reason, other than an ill-fitting pro[s]thesis, which was an assumption made at the facility, that this wound is there and doesn't heal?  So that's another thing, that PHS was negligent and did not meet its obligation under its own standards through NCCHC.

Boyd Decl., Ex. 8 (Weinstein Depo.) at 145:1-146:1.

Defendant Croasdale, Prison Health Services ("PHS"), the Alameda County defendants, and the CDC defendants oppose the motion.  Croasdale contends that plaintiff has failed to meet her burden of demonstrating any deliberate indifference on his behalf, through the testimony of plaintiff's expert Dr. Weinstein or otherwise.  Defendant PHS also argues that plaintiff has presented no evidence of deliberate indifference by any PHS employee, or any policy or custom of deliberate indifference within the entity.  The Alameda County defendants oppose plaintiff's motion, bring a motion to strike portions of the evidence submitted, and oppose plaintiff's RJN, particularly court documents in the class action Plato v. Schwarzenegger, C 01-1351 TEH, pending in this district.  The CDC defendants also seek to exclude the Boyd Declaration, the documents for which judicial notice is sought, and the July 22, 2005, July 28, 2005, and August 5, 2005 submissions by plaintiff, and they oppose the motion on grounds that plaintiff has failed to meet her burden for summary judgment on either her ADA/Rehabilitation Act claim or her § 1983 claim.

Plaintiff has variously alleged deliberate indifference to serious medical needs in violation of the Eighth Amendment, excessive force in violation of the Eighth Amendment,[4] and a violation of due process based on Cammerin Boyd's lack of access to his attorney.  Plaintiff has entirely failed to meet her burden of production on her § 1983 claim, under any of these theories.

---

[4] For incarcerated persons, excessive force claims are governed by the Eighth Amendment's prohibition on cruel and unusual punishment; the standard is whether defendants inflicted pain or force in a wanton or sadistic manner.  Whitley v. Albers, 475 U.S. 312, 319 (1986).

United States District Court

For the Northern District of California

1   "The Eighth Amendment's proscription against cruel and unusual treatment is violated when officials

2   remain deliberately indifferent to the serious medical needs of convicted prisoners." Carnell v. Grimm, 74 F.3d

3   977, 979 (9th Cir. 1996) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Under the Eighth

4   Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care

5   only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" Gibson v. County

6   of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

7   The Eighth Amendment's deliberate indifference standard is a subjective one: "the official must both be aware

8   of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

9   draw the inference." Farmer, 511 U.S. at 837. Here, Dr. Weinstein's testimony that Croasdale "failed to

10  protect" his patient from the adverse conditions of confinement does not establish the subjective state of mind

11  required for deliberate indifference, nor do his opinions that PHS provided inadequate medical care.

12  Moreover, plaintiff refers to various exhibits to support her motion, but does so only with a citation to the entire

13  exhibit, not to specific page numbers or lines of deposition testimony. See Pl.'s Mot. at 2:12-13; 18 ("Ex. 1,

14  3, 5, 7, 8, 9, 11, 12, 18 & 20"; "Ex. 8, 9, 11 & 20."). On summary judgment, the Court must restrict its

15  inquiry to facts supported by the record. Unsworn allegations in the pleadings are not facts that can be used

16  to defeat summary judgment. Moreover, it is not the Court's task "to scour the record in search of a genuine

17  issue of triable fact," see Kennan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996), and it "need not examine the

18  entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition

19  papers with adequate references so that it could conveniently be found." Carmen v. San Francisco Sch. Dist.,

20  237 F.3d 1026, 1031 (9th Cir. 2001).

21      Plaintiff's motion suffers from this deficiency throughout. She argues briefly that the Alameda County

22  and CDC defendants violated Boyd's due process right to access the courts by denying him confidential

23  attorney-client visits. Id. at 8:13-20. While she states that "[i]t is undisputed" that this denial occurred, plaintiff

24  cites no facts in the record establishing this fact. For this reason, plaintiff has not met her burden of showing

25  that there is no genuine issue of material fact for trial. To the extent that plaintiff seeks summary judgment on

26  any of her other claims, such motion must be DENIED.

27      Plaintiff's motion for summary judgment is DENIED.

28

**United States District Court**
For the Northern District of California

**II.      Defendant Croasdale's and Doctors Hospital's Motions for Summary Judgment**

Defendants Croasdale and Doctors Hospital seek summary judgment on all of the causes of action against them in the Third Amended Complaint: the first cause of action under Section 504 of the Rehabilitation Act and the ADA, the second cause of action under 42 U.S.C. § 1983, the third cause of action under 42 U.S.C. § 1985, the fourth cause of action for negligence, the sixth cause of action for intentional infliction of emotional distress, the seventh cause of action (the "survival action"), and the eighth cause of action under Cal. Bus. & Profs. Code § 17200.  These defendants have filed separate motions, to which plaintiff has filed a single opposition brief.  Plaintiff's claims against these defendants arise out of Boyd's treatment at Doctors Hospital from May 29, 2001 to June 3, 2001, and from June 6, 2001 to June 16, 2001, the date when Boyd signed an "Against Medical Advice" form and signed out of the hospital.  Generally, Boyd alleges that the care he received from Dr. Croasdale and his treatment by other staff at Doctors Hospital– particularly the practice of shackling both of his hands to the bed – constituted discrimination, violated various statutes and fell below the standard of care.  Therefore, the Court treats these motions together.

**A.      ADA/Section 504 claim**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.S. § 12132 (2003).  Similarly, Section 504 of the Rehabilitation Act provides that no handicapped person shall be denied benefits or discriminated against "solely by reason of his or her disability . . . under any program or activity receiving Federal financial assistance .. . ." 29 U.S.C. § 794(a) (2003).  Title II of the ADA and Section 504 refer to "public entities" and "programs or activit[ies] receiving federal funding," not to individuals.  Plaintiff bears the burden of establishing the existence of a reasonable accommodation that was not provided.[5]

_____

[5] Defendant Croasdale also addresses Title III of the ADA and argues that, if plaintiff's claim against him is based on that provision, it must fail because (1) he is not a "private entity which owns, leases, or operates a place of public accommodation," but rather an independent contractor working at Doctors Hospital, and (2) Title III claims are only maintainable if the plaintiff can show a risk of future harm, which plaintiff cannot do because Boyd is deceased.  The Court agrees that a Title III claim is not viable, and in any event plaintiff's opposition addresses only Title II of the ADA.

7

United States District Court

For the Northern District of California

1    Defendants argue that there is no evidence to support an ADA or Section 504 claim.  Defendant

2  Croasdale contends that plaintiff has failed to identify what accommodations should have been made and why

3  they were reasonable or necessary under the circumstances.  In addition, Croasdale argues that he had no

4  authority to modify the CDC's shackling policy, and that the CDC has a legitimate interest in keeping inmates

5  chained while they are in the hospital: to ensure the safety of others at the hospital and prevent flight.

6    In the complaint, plaintiff alleges that defendants failed "to make reasonable modifications to rules,

7  policies or practices for a qualified individual such as Mr. Boyd, thus they did not provide Mr. Boyd with

8  meaningful access to the benefit of the services, including medical services, testing, treatment, information, and

9  other services provided by defendants in their capacity as medical providers under contract to provide

10  adequate care to inmates."  Third Am. Compl. ¶ 84.  The only specific reasonable accommodation of which

11  Boyd was allegedly deprived was to have a modification of the CDC procedure of shackling or restraining

12  inmates at Doctors Hospital.  Plaintiff contends that there is a triable issue on whether Dr. Croasdale acted with

13  deliberate indifference to Boyd's need for a reasonable accommodation because the CDC procedure at issue

14  allowed the shackling of one wrist but not both.  According to plaintiff, the witness produced by defendant

15  Doctors Hospital regarding ADA compliance, Tina Burch, testified that inmates are usually restrained by one

16  wrist, that they are only typically shackled by both wrists if they are "combative," and that she did not know

17  of any instances where nurses have asked deputies to shackle both wrists of a mobility-impaired patient.  Boyd

18  Decl., Ex. 14 (Depo. of Tina Burch) at 89-91.  Plaintiff also asserts, without citation to the record, that Boyd

19  was "handcuffed to a bed 24/7 for 17 days" Pl.'s Opp'n re: Croasdale, Doctors Hospital, and Davis at 6:15.

20    Viewing the evidence in the light most favorable to plaintiff, the Court finds that there is no triable issue

21  of fact regarding his ADA and Section 504 claims. Witness Burch's testimony does not establish that the

22  decision to shackle plaintiff by both wrists constituted discrimination based on his disability or that shackling

23  him by only one wrist or not at all would have been a reasonable accommodation.  Burch testified that inmates

24  are usually shackled on one wrist, but that CDC officers may shackle both wrists of combative inmates, and

25  that she has never personally seen nurses ask CDC officers to shackle both wrists of a mobility-impaired

26  patient. Boyd Decl., Ex. 14 at 89:19–24; 90:14-17.  Additional unsupported factual allegations in plaintiff's

27  Opposition brief do not shed light on any other conceivable disability discrimination or lack of reasonable

28

8

accommodation. For example, plaintiff states that "Mr. Boyd testified in deposition that he was treated differently because of his status as a prisoner as opposed to nonprisoner patients. He was referred to by health care providers as 'the prisoner' instead [of] as the 'patient.'" Pl.'s Opp'n to Croasdale, Doctors Hospital, and Davis at 6:7-9. The Court cannot "scour the record" – here, hundreds of pages of Boyd's deposition testimony – to locate evidentiary support for this allegation. Kennan v. Allan, 91 F.3d at 1278; Carmen v. San Francisco Sch. Dist., 237 F.3d at 1031. But even assuming that plaintiff had provided citations, Boyd's own testimony that he was treated differently does not create a triable issue.

Summary judgment is GRANTED to defendants on this claim.


**B.      Section 1983 claim**

Plaintiff addresses this claim only indirectly in her Opposition. The bases for the § 1983 claim appear to be (1) that these defendants violated Boyd's Eighth Amendment rights by their deliberate indifference to his serious medical needs and to the conditions of his confinement, and (2) that they violated due process by denying Boyd access to his attorney and family for the three weeks he was at Doctors Hospital. In evaluating plaintiff's summary judgment motion, the Court concluded that plaintiff had failed to meet her burden of production on this claim. Here, the Court views the evidence in the light most favorable to plaintiff, but also concludes that she has not shown any evidence of deliberate indifference, not even enough to create an issue of material fact.

Deliberate indifference to serious medical need is established "only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" Gibson v. County of Washoe, 290 F.3d at 1187, quoting Farmer v. Brennan, 511 U.S. at 837. Plaintiff generally cites Exhibits 8, 9, 11 and 20 to the Boyd Decl. as evidence of deliberate indifference; these are the deposition testimony of Dr. Corey Weinstein, the deposition of Cammerin Boyd, multiple inmate grievances filed by Boyd, and the third amended complaint in this action. She argues that defendant Croasdale's knowledge is evidenced by his June 6, 2001 "order" that Boyd be transferred to Vacaville for six to eight weeks of intravenous antibiotics care. Pl.'s Opp'n to Croasdale, Doctors Hospital, and Davis at 7:21-25. Plaintiff's blanket citations to lengthy deposition testimony do not defeat summary judgment; nor do the allegations in plaintiff's complaint. In addition, it is difficult to

United States District Court

For the Northern District of California

1  conceive of how Croasdale's attempt to have Boyd transferred for treatment could display his indifference.

2  Plaintiff apparently relies on Boyd's grievances to show that he was unable to file any while at Doctors Hospital,

3  but this fact, even if true, does not establish Croasdale, Davis, and the hospital's knowledge of and disregard

4  for the risk of serious harm to Boyd.

5          Accordingly, the Court GRANTS summary judgment on this claim.

6

7  **C.      Section 1985 claim**

8          Defendants argue that plaintiff has offered neither evidence nor argument to defeat summary judgment

9  on this claim, and the Court agrees.  Plaintiff has presented no evidence establishing (1) a conspiracy; (2) for

10  the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the

11  laws; (3) an act in furtherance of the conspiracy; or (4) injury.  The Court GRANTS summary judgment on this

12  claim.

13

14  **D.      Negligence**

15          Defendants contend that they are entitled to summary judgment because the treatment provided by

16  Croasdale and Doctors Hospital staff generally was within the standard of care.  They each offer expert

17  testimony in support of this contention: Dr. Watkins on Dr. Croasdale's behalf and Dr. Joseph on Doctors

18  Hospital's behalf.  Dr. Watkins states that, based on the admitting orders and diagnosis of suspected

19  osteomyelitis by Dr. Croasdale, as well as Croasdale's prescribed treatment of intravenous antibiotics and

20  attempts to convince Boyd to submit to this treatment at Doctors Hospital, Croasdale met the standard of care.

21  Watkins Decl. ¶¶ 18-21.  Dr. Joseph also states that the care and treatment provided by Doctors Hospital met

22  the standard of care, including Dr. Croasdale's admitting orders, recommendation of intravenous antibiotics,

23  and discharge orders after Boyd signed an Against Medical Advice form on June 16, 2001.  Joseph Decl. ¶¶

24  5, 7, 11.  In addition, Joseph opines that the treatment provided by the nursing staff was adequate and diligent,

25  as were their attempts to transfer Boyd back to DVI after he requested discharge.  Id. at ¶ 15-16.  Defendants

26  argue that this testimony negates the essential element of breach, and that Dr. Joseph's review of the medical

27  records reveals that Boyd's stump wound improved and his condition remained good during his time at the

28

10

United States District Court

For the Northern District of California

1  hospital, negating the element of causation.  Id. at ¶¶ 18-20.

2          When a defendant moves for summary judgment on a negligence claim and provides expert testimony

3  that a physician's conduct fell within the standard of care, a plaintiff must produce conflicting expert evidence

4  to defeat summary judgment.  Munro v. Regents of Univ. of California, 215 Cal. App. 3d 977, 985 (1989).

5  Here, plaintiff offers the testimony of her expert, Dr. Corey Weinstein, in support of arguments that Boyd

6  experienced suffering, that Doctors Hospital "has a duty to figure ou[t] a way to construct solutions for issues

7  of custodial environment at its institution," and that "there were aspects of Dr. Croasdale's care that fell below

8  the standard of care."  Pl.'s Opp'n re: Croasdale, Doctors Hospital, and Davis at 9:26-27; 10:1-2.  Weinstein

9  testified, in relevant part, that Boyd was suffering at Doctors Hospital because:

> [Boyd] was spoken to at length by nurses to try to figure out how he could continue care.  He
> was frustrated with having to be in a bed without – there are notes there about he can't make
> phone calls.  In other words, he [had] no access to the ordinary general routines of a prison
> setting like – things like phones and such, sociability programs, and that he came to dispute the
> staff over this.  So that he at one time checked himself back out and said, "I just can't do this
> anymore," knowing well that the doctors had advised him that he needs intravenous antibiotics
> . . . Yet he chose at one moment to stop everything and leave.  What a difficult and horrible
> choice we put him in. . . So that the leader of the te[a]m, his medical care [team], as Doctor
> Croasdale was, had an obligation to protect his patient from adverse conditions of confinement
> that interfered with the patient's ability to function effectively in that setting.

Boyd Decl., Ex. 8 (Weinstein Depo.) at 44:18-45:16.

Weinstein also opined that Croasdale and the hospital were responsible for the circumstances of Boyd's

custody at Doctors Hospital, stating that, while "[Croasdale] couldn't have given direct orders [to change the

circumstances], . . . [t]he Department of Corrections is about to go into receivership for continued negligent,

unconstitutional deliberate indifference of care," and that "prisoner/patients are not protected from the adverse

circumstances of the conditions of their confinement by medical staff."  Id. at 46:3-16.  When asked specifically

what aspects of Croasdale's treatment fell below the standard of care, Weinstein stated:

> Let me answer in this way.  I think that it's – while it's common for people who are not
> employed directly by Corrections and who are not working within the prison setting to ignore
> aspects of their responsibility that they would more obviously have if they were within a
> correctional setting.  So it's common for Doctor Croasdale to not be aware of this or relate
> to it or perhaps even think that it's part of his world . . . [Boyd] was basically there because
> the Department of Corrections couldn't figure out another place that would have been more
> custodially appropriate and effective for him as a prisoner/patient to be.  So what is Doctor
> Croasdale's responsibility in terms of seeing his patient there suffering from this aspect; does
> he have a responsibility we might ask/ And I would answer, yes, he does.

Id. at 43:4-12; 44:6-13.

11

These statements, however, do not constitute "conflicting" evidence on the issue of negligence, and in fact Dr. Weinstein ultimately testified that the medical care provided to Boyd at Doctors Hospital "met the technical standard of care," and that the medical care rendered by Dr. Croasdale in May and June of 2001 met the standard of care "[i]n a narrow sense." Id. at 42:9-25. Accordingly, plaintiff has not established a triable issue of fact, and defendants Croasdale, Davis, and Doctors Hospital are entitled to summary judgment on this claim.

### E. Intentional infliction of emotional distress

A claim for intentional infliction of emotional distress requires: (1) outrageous conduct by the defendants; (2) intent to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979) (citation and internal quotation marks omitted). Furthermore, to be considered outrageous, the conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Cervantez v. J.C. Penney Company, Inc., 24 Cal 3d 579, 593 (1979).

Plaintiff does not address this claim in her Opposition brief, and defendants contend that the record is devoid of any evidence, even in decedent Boyd's testimony, of extreme and outrageous conduct by Croasdale or Doctors Hospital, or of severe emotional suffering. In addition, Doctors Hospital argues that the alleged denials of access to an attorney and medical care cannot form the factual basis for the "extreme and outrageous conduct" required for this tort. The Court agrees, and finds that defendants are entitled to summary judgment on this claim.

### F. Survival action

Defendants argue that plaintiff's survival action is not properly pled because a survival action is not a separate and independent tort, but rather allows for certain damages in actions brought by a decedent's personal representative. The Third Amended Complaint states that "[t]his cause of action is brought pursuant to 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.34." Third Am. Compl. ¶ 108. It appears that plaintiff seeks survival damages for the § 1983 claim, and that indeed this separate cause of action is superfluous. In addition, plaintiff makes no mention of this claim in her Opposition brief, and the Court finds

1    summary judgment in favor of defendants appropriate.

2

3        **G.    Section 17200**

4        In this claim, plaintiff alleges that defendants have committed the unfair business practices of "denying

5    Mr. Boyd 'the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

6    accommodations' as provided to non-African American person[s], and non-disabled inmates and required

7    under the Civil Rights Act of 1964, 42 U.S.C. § 2000a, et seq. and the Unruh Civil Rights Act," and that

8    "[d]efendants . . . have a pattern and practice of discriminating against African Americans and disabled inmates.

9    They also have a pattern and practice of violating the ADA and Rehabilitation Act and the district court's

10   remedial plan, consent decrees and settlement agreements." Third Am. Compl. ¶¶ 110-111.

11       Defendants argue that this claim must fail because plaintiff has produced no evidence of any unlawful

12   business practice and in any event plaintiff lacks standing to bring a section 17200 action because Marylon

13   Boyd has suffered no actual injury.  Plaintiff contends that section 17200's reach is broad enough to include

14   the conduct of Doctors Hospital staff in "ignoring the conditions of inmates being subject to intolerable

15   conditions while hospitalized" and failing to issue orders to have Boyd unshackled.  Pl.'s Opp'n re: Croasdale,

16   Davis, and Doctors Hospital at 12:16-17.  She also argues that she has standing to bring an injunctive relief

17   action based on disability discrimination.

18       Plaintiff is correct that discrimination under the Unruh Act may be an unfair business practice giving rise

19   to a section 17200 claim.  See Consumers Union of U.S. v. Fisher Dev., 208 Cal. App. 3d 1433 (1989).

20   However, she has not produced any evidence of disability discrimination.  In her Opposition, she offers the

21   statement that "San Francisco General Hospital provides medical care to prisoners and in doing so prisoners

22   are not chained to the bed 24/7."  Pl.'s Opp'n re: Croasdale, Davis, and Doctors Hospital at 12:22-23.  For

23   this statement, she provides a citation to the record which the Court cannot locate;[6] in any event, evidence that

24   another hospital adopts a different practice for prisoner patients is not sufficient to establish discrimination.

25       Accordingly, defendants' motion for summary judgment is GRANTED.

26

27

28       [6] The citation is: "See Dec. 2 of M. Boyd; and Ex. 23, thereto, Depo excerpts of Dr. Weinstein."

*United States District Court*
For the Northern District of California

**III.     Alameda County Defendants' Motion for Summary Judgment**

Plaintiff's claims against the Alameda County defendants arise out of Boyd's incarceration at Santa Rita Jail for forty-five days in 2001.  Boyd was arrested on March 30, 2001, booked and screened at the jail, and assigned to a cell for a mobility-impaired inmate with a wheelchair.  Martinez Decl. ¶ 4; Hagan Decl. ¶ 4.

Plaintiff brings claims for (1) a violation of the ADA and Section 504 of the Rehabilitation Act; (2) a violation of 42 U.S.C. § 1983; (3) conspiracy to violate civil rights under 42 U.S.C. § 1985; (4) negligence and negligent hiring, supervision and retention; (5) assault and battery; (6) intentional infliction of emotional distress; (7) survival action; and (8) a violation of Cal. Bus. & Profs. Code § 17200.  Although her Opposition brief addresses the summary judgment motions of the Alameda County defendants, PHS, and the CDC defendants all together, the Court treats each of these three motions separately.

**A.     ADA/Section 504 Act claim**

Plaintiff brings this claim generally against all defendants and does not specify what ADA and Section 504 violations were committed by the Alameda County defendants.  According to these defendants, summary judgment is appropriate on this claim because there is no evidence that Boyd was excluded from or denied benefits based on his disability.  See 42 U.S.C. § 12132; 29 U.S.C. § 794(a). During plaintiff's incarceration at Santa Rita Jail, he was in a cell designed to accommodate a mobility-impaired inmate with a wheelchair.  The cell had handrails and was wheelchair accessible.  Widen Decl., Ex. 10 (Boyd Depo.) at 109.

The only apparent evidentiary dispute centers around the adequacy of the shower facilities.  Boyd received the same number of showers per week – three to five – as able-bodied inmates, and his cell was directly across from a private shower.  Hagan Decl. ¶ 5.  Boyd testified that this shower was inadequate because he needed a nozzle and a shower bench in order to wash his leg properly.  Widen Decl., Ex. 10 at 118. After a couple of weeks, however, Boyd agrees that defendants prepared a schedule for him to shower three times a week in the infirmary, which was more suitable to someone with his disability.  Id. at 119.  He was provided access to the common areas of his housing unit as well as to all other programs and benefits, and there is no evidence that his disability prevented him from obtaining adequate medical care.

Plaintiff does not respond to defendants' showing of how Boyd's disability was accommodated at

United States District Court
For the Northern District of California

Santa Rita Jail.  Instead, she argues:

> It is undisputed that accommodation was required by all defendants in this action.  Thus, satisfying the first prong.  As to the second prong, Defendants and each of them can put forth no credible evidence that they reasonably considered Mr. Boyd's particular needs while incarcerated at each of the named institutions.  Each and every time Mr. Boyd had to file grievance after grievance before he was even placed in a cell that [was] partially ADA compliant and each and every time he complained he was met with retaliation and reprisals at each institution.  See Dec. Of M. Boyd in Support of Mot. For. Sum Jdgt and Exbs 5, 9, 10, 11, 12, 16, 17, 18 & 20.

Pl.'s Opp'n re: Alameda County Defs., PHS, and CDC Defs. at 4:19-25.

This statement is plainly insufficient to defeat summary judgment.  Rather than setting forth the lines of deposition testimony or even the pages of exhibits that establish a genuine issue of fact for her ADA claim, plaintiff apparently expects the Court to search for this evidence among nine exhibits and hundreds of pages.  This the Court need not, and will not, do.  See Carmen v. San Francisco Sch. Dist., 237 F.3d at 1031.

In the absence of a triable issue of fact, summary judgment is GRANTED to defendants.

**B.      Section 1983 claim**

In the § 1983 claim, plaintiff alleges violations of Boyd's Eighth Amendment rights based on deliberate indifference to Boyd's serious medical needs and excessive force.  Third Am. Compl. ¶ 86, 93.   These allegations are asserted against County Sheriff Technician Lynn Dutton, Deputy Thomas Burns, and Captain Frederick Hagan, arising primarily out of an incident on April 18, 2001.

On that date, at 1:00 p.m., defendant Dutton was on duty in the control booth of Boyd's housing unit, and notified Boyd over the intercom that it was time for him to go for an afternoon medical appointment in the infirmary.  Boyd had previously filed a grievance against Dutton regarding several occurrences when he pushed his call button for laundry requests and his emergency button for pain pills and medical assistance.  See Martinez Decl., Ex. 4.  Boyd had been to an appointment earlier that day with Nurse Torres and was refusing his afternoon appointment.  Id., Ex. 5 at 1.  He was in the unit's dayroom, seated in his wheelchair wearing one prosthetic leg.  Defendant Burns states that he decided to separate Boyd from the other inmates, and began pushing his wheelchair across the pod.  Boyd began shouting.  The brakes of the wheelchair were on, and Boyd testified that he tried to stand up on his prosthetic leg and Burns "rammed" him with the wheelchair.  Widen Decl., Ex. 10 at 180.  The deputies then instructed all inmates to lock down.  As a result of this incident, Burns

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    took Boyd to an isolation cell and requested a psychological evaluation.  Boyd filed a grievance based on this

2    incident.

3          To establish an Eighth Amendment violation regarding the conditions of his confinement, a prisoner must

4    demonstrate (1) that a prison official deprived him of the "minimal civilized measure of life's necessities," and

5    (2) that the official acted with deliberate indifference in doing so.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th

6    Cir. 2004) (citation omitted).  "Deliberate indifference," the subjective prong of this two-part test, is only

7    established if the official "knows of and disregards an excessive risk to inmate health and safety," and requires

8    a showing of "what a defendant's mental attitude actually was."  Id. (citation omitted).  Here, defendant argues

9    that summary judgment is proper because the isolated instances of Technician Dutton's rudeness and denials

10   of pain medication do not rise to the level of deliberate indifference, and because there is no evidence that she

11   sent Deputy Burns to harass Boyd on April 18, 2001, as Boyd alleges.  In her Opposition, plaintiff responds

12   with general allegations about deprivations of ADA compliant housing and showers, clean laundry and

13   prosthetic socks, the benefits of being a pod worker, access to telephone calls, and access to the law library,

14   among others.  As defendant notes, plaintiff does not provide factual support for these statements, and they are

15   therefore insufficient to defeat summary judgment.

16         To establish an Eight Amendment violation based on excessive force, a plaintiff must show that force

17   was used "maliciously and sadistically for the very purpose of causing harm."  Whitley v. Albers, supra, 475

18   U.S. 312, 320-21 (1986).  Defendant argues that plaintiff cannot make this showing because Boyd

19   acknowledged that he got out of the wheelchair to get away from Burns, and thus the force used by Burns was

20   necessary under the circumstances.  In making this inquiry, the Court considers such factors as the need for the

21   application of force, the relationship between the need and the amount of force, and the extent of injury inflicted.

22   Whitley, supra, 475 U.S. at 321.  The relevant inquiry is "whether the use of force could plausibly have been

23   thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is

24   tantamount to a knowing willingness that it occur."  Id.  In the prison setting, force may be used "in a good faith

25   effort to maintain or restore discipline."  Id. at 320.  Viewing the evidence in the light most favorable to plaintiff,

26   the Court concludes that Officer Burns could well have thought that the use of force was necessary for this

27   purpose, because Boyd was sitting in the dayroom with other inmates, began shouting at Officer Burns, and

28

16

United States District Court
For the Northern District of California

1    leapt from the wheelchair to escape.  As part of her excessive force allegation, plaintiff also contends that

2    Officer Burns placed Boyd in an isolation cell after the incident "for more than five hours" and "in violation of

3    Santa Rita Jail's own rules."  Pl.'s Opp'n to CDC, Alameda, and PHS at 6:1-5.  As defendants note, these

4    two facts are not substantiated in plaintiff's brief or in the record.  In addition, temporary isolation of a violent

5    prisoner is not per se unconstitutional, and was not unreasonable under the circumstances here.  See Anderson

6    v. County of Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995).

7        The individual County defendants may also be entitled to qualified immunity.  For the qualified immunity

8    inquiry, the Court first asks whether, viewing the facts in the light most favorable to the plaintiff, the defendants'

9    conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If so, then the Court

10   moves to the second step of the inquiry, whether the right was clearly established, that is, whether it would have

11   clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Id.  For the excessive

12   force allegation, defendants contend that Burns could have reasonably believed that some force was necessary

13   to restore discipline.  For the deliberate indifference allegation, defendants argue that Dutton and Burns could

14   have believed that the risk of harm in this situation was not particularly high.  Estate of Ford v. Ramierz-Palmer,

15   301 F.3d 1043, 1050 (9th Cir. 2002).

16       The basis for plaintiff's claims against the County itself and Captain Hagan is policymaker liability under

17   Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).  According to defendants, Hagan was not in fact

18   responsible for any of the County's policies, and he was not individually involved in any of the incidents.  The

19   Court finds that plaintiff has not established that the Court had a policy or custom of unconstitutional activity,

20   and therefore there is no basis for Monell liability.

21       Plaintiff also asserts that Boyd was also denied confidential attorney visits at Santa Rita Jail.  For this

22   allegation, she submits her own declaration that one confidential visit was denied her shortly after the April 18,

23   2001 incident, and that she had to meet with Boyd instead in the regular visitors room.  These facts are

24   insufficient to establish a due process violation based on denial of access to attorney services.

25       For all of these reasons, summary judgment is GRANTED as to plaintiff's § 1983 claim.

26

27   **C.    Section 1985 claim**

28

17

1    Plaintiff's Opposition brief does not mention this claim, and defendants seek summary judgment on

2    grounds that there is simply no evidence of a conspiracy to deprive Boyd of his civil rights.   The only

3    conceivable basis for this claim is plaintiff's allegation that Technician Dutton sent Deputy Burns to harass Boyd,

4    but plaintiff has demonstrated no facts that an agreement took place between these two defendants or among

5    any others.  In the absence of any such agreement to violate constitutional rights, see Franklin v. Fox, 312 F.3d

6    423, 441 (9th Cir. 2002), plaintiff's claim fails.

7

8    **D.      State law claims**

9    Defendants argue that these claims are barred by various government immunities in the California Tort

10   Claims Act.    According to defendants, plaintiff can only seek damages from the County or Captain Hagan

11   for the knowing denials of medical care because Cal. Gov. Code § 844.6 excludes public entities from liability

12   for injury to prisoners.  In addition, they contend that all County defendants are immunized from liability under

13   Cal. Gov. Code §§ 820.2, 820.4, and 815.2, which prohibit liability of public employees and entities for

14   discretionary acts by public officials.  Plaintiff does not address these immunity arguments in her Opposition.

15   Even without these immunities, the Court finds that defendants are entitled to summary judgment because there

16   is no triable issue of fact on any of plaintiff's state law claims.

17

18   **1.      Negligence**

19   Plaintiff does not address the negligence claim in her Opposition.  Defendant contends that there is no

20   evidence to support this claim.  Under Cal. Gov. Code § 845.6, the County defendants are not liable unless

21   plaintiff can show that one of these public employees "knows or has reason to know that the prisoner is in need

22   of immediate medical care and he fails to take reasonable action to summon such medical care."  Cal. Gov.

23   Code § 845.6.  Because the medical records establish that Boyd received medical treatment on an almost daily

24   basis, plaintiff cannot make this showing.  Summary judgment is GRANTED on this claim.

25

26   **2.      Assault and battery**

27   Plaintiff also fails to address this claim in her Opposition brief.  Defendants argue, and the Court agrees,

28

that there is no basis for such a claim against defendant Dutton, and that plaintiff has not shown that the use of force by defendant Burns was unreasonable.  Summary judgment is GRANTED on this claim.

### 3.    Emotional distress

The Court GRANTS defendants' motion for summary judgment because plaintiff has not shown the extreme and outrageous conduct required for this tort.

### 4.    Survival action

For the same reasons as discussed in Part II F, above, summary judgment is GRANTED on the survival action.

### 5.    Section 17200

The County defendants argue that correctional activities are not "business practices" within the meaning of the statute, and in any event that section 17200 does not apply to public entities like the County itself.  Plaintiff provides various citations to authorities recognizing the broad reach of the statute and allowing section 17200 claims based on discrimination.  Because there is no evidence of any unfair business practice, the Court GRANTS summary judgment on this claim.

## IV.    CDC Defendants' Motion for Summary Judgment

Plaintiff brings claims against San Quentin State Prison, Deuel Vocational Institution ("DVI"), Pleasant Valley State Prison ("PVSP"), California Institute for Men ("CIM"), Steve Moore, Lori DiCarlo, Gail Lewis, Claude Finn, M.A. Hamilton, Nurse Sigales-Gorman, Officer Gorman, Nurse Blanks, Officer Watkins, Officer Casey, Captain M.H. Reyes, Officer Hill, Sergeant Hill, and Dr. Jaques Hirschler (collectively "CDC defendants").  Boyd was incarcerated in CDC facilities from October 1999 to August 2000, and from March 2001 to August 2001.

Boyd was housed at San Quentin State Prison briefly in November 1999, and on December 2, 1999, he was transferred to DVI.  See Montano Decl., Exs. A, B.  He was housed in wheelchair-accessible cells in

both institutions.  Caton Decl. ¶¶ 6, 7.  At DVI, Boyd received medical treatment for a potential infection to his stump, and radiographs revealed no features of osteomyelitis.  Maiorino Decl., Ex. A (Boyd Depo.) at 395:8-396:3; id., Ex. D at 0021.  Boyd filed a grievance requesting additional prosthetic socks.  Id., Ex. E at 0048-49.  He received ace bandages, an egg-crate mattress, and a urinal, and a prosthetic sock was ordered for him.  Id., Ex. D at 0015-16; Ex. E at 0049.

On January 27, 2000, while at DVI, Boyd was punched by a "psychologically disturbed" cellmate, and he alleges that defendant Officer Watkins intentionally placed this cellmate with Boyd so that he would attack him, in retaliation for the grievances Boyd was filing.  Id., Ex. A at 409:6; 413:7-24.  A few days later, Boyd alleges, Officer Casey attacked and assaulted him during a search of his cell, by pulling his wheelchair backwards and holding Boyd suspended, which put pressure on his stumps.  Third Am. Compl. ¶ 69.  Officer Casey then spun Boyd around in his wheelchair, threw him to the floor, and "body slammed" him.  Id.

In February 2000, Boyd was transferred to PVSP, where he had access to wheelchair-accessible showering facilities and restrooms.  Montano Decl., Exs. A, B; Caton Decl. ¶ 8.  He remained at PVSP until his release on August 21, 2000.  Plaintiff has sued Gail Lewis, the warden at PVSP, based on his experience there.  In addition, he alleges that Officer Hill and Sergeant Hill retaliated against him, see Third Am. Compl. ¶ 73, although during his deposition he could not recall the details of a July 22, 2000 incident with Officer Hill or who Sergeant Hill was.  Maiorino Decl., Ex. A (Boyd Depo.) at 470:7-20; 471:8-10.

Plaintiff also brings claims based on Boyd's incarceration from March 2001 to August 2001.  Boyd was housed at Santa Rita Jail from March 2001 to May 15, 2001, when he was transferred to DVI.  Montano Decl., Exs. A, B.  On May 23, 2001, while at DVI, Boyd alleges that when he went to the infirmary and received a daily dressing change from Nurse Sigales-Gorman, her husband Officer Gorman screamed and spit at Boyd and accused him of looking at his wife.  Third Am. Compl. ¶ 45; Maiorino Decl., Ex. A at 505:12-15.  Boyd alleges that this constituted excessive force.  Three days later, when Boyd went to the infirmary for an antibiotics shot, he asked that someone other than Nurse Gorman administer it.  She refused, ultimately pressed the alarm button for officers, and accused Boyd of wrongdoing.  Third Am. Compl. ¶ 51.  On May 25, 2001, Boyd alleged that Nurse Blanks used excessive force by grabbing his chair and pushing him out of the clinic.  Third Am. Compl. ¶ 49; Maiorino Decl., Ex. A at 502:3-8.

As discussed with respect to the motions brought by defendants Dr. Croasdale and Doctors Hospital, Boyd was taken to Doctors Hospital on May 29, 2001 for a bone-scan because of a suspected problem with his left stump. He returned to DVI for three days on June 3, 2001. Montano Decl., Exs. A, B. He returned to Doctors Hospital on June 6, 2001, where he remained until June 18, 2001. Id. Upon his discharge from Doctors Hospital, Boyd was transferred to CIM rather than back to DVI. He alleges that defendant Dr. Hirschler, the Chief Medical Officer of DVI, conspired to send him to CIM. Maiorino Decl., Ex. A at 625:9-626:1. During a telephone conversation with Dr. Hirschler, Boyd felt that the nurses and officers were eavesdropping and whispering about "the plans," specifically "how [he] was going to be treated from that point on after they figured out how serious the infection was." Id. at 625:20-626:17.

During his incarceration at CIM, Boyd was housed in a wheelchair-accessible facility and received daily dressing changes and oral and intravenous antibiotics. Montano Decl., Exs. A, B; Caton Decl. ¶ 9; Maiorino Decl., Ex. A at 573:4-8; 577:2-5. Although Boyd testified that he did not refuse to take antibiotics while at CIM, see Maiorino Decl., Ex. A at 573:9-11, his medical records state that he refused his medications, antibiotics, and various forms of medical treatment between June 18, 2001 and his release. See Maiorino Decl., Ex. C at 0001-13; Ex. D at 0030, 0034, 0037, 0042, 0043, 0044. Boyd remained at CIM until his release on August 26, 2001.

A.    Statute of limitations

Defendants seek summary judgment of plaintiff's second, third, fourth, fifth, sixth, and seventh causes of action to the extent they are based on the 1999-2000 period of confinement, because they are barred by a one-year statute of limitations. The statute of limitations for the claims against San Quentin, PVSP, Officer Watkins, Officer Casey, Officer Hill, Sergeant Hill, and the 1999-2000 claims against DVI, was tolled during the period of Boyd's incarceration from October 1999 to August 2000, but began to run upon his release on August 21, 2000. Therefore, plaintiff had until August 2001 to file suit based on this conduct. He did not file suit until May 20, 2002. The motion is GRANTED as to these claims.

The Court will thus consider only the factual allegations from March through August 2001 with respect to the remaining claims.

21

United States District Court

For the Northern District of California

### B.     ADA/Section 504 claim

Defendants seek summary judgment of this claim on multiple grounds: (1) that Boyd was properly housed in all CDC facilities pursuant to the terms of the settlement in Armstrong v. Davis; (2) the CDC defendants are entitled to qualified immunity; (3) plaintiff cannot show deliberate indifference to his medical needs; and (4) plaintiff is not entitled to either punitive damages or injunctive relief.  In addition, they argue that the ADA and Rehabilitation Act claim cannot be brought against any of the individual CDC defendants.

To establish an ADA or Rehabilitation Act claim, a plaintiff must show that (1) he is a disabled person, (2) that he is otherwise qualified, and (3) that defendants' actions either excluded him from or denied him the benefits of a service, program, or activity, or otherwise subjected him to discrimination on the basis of his disability.  To recover monetary damages under Title II of the ADA, a plaintiff must show intentional discrimination under a "deliberate indifference" standard, which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  See Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001).

Here, plaintiff has not established a genuine issue of material fact on her ADA claim.  Plaintiff offers only the same conclusory argument as against defendants Croasdale and Doctors Hospital:

> Defendants and each of them can put forth no credible evidence that they reasonably considered Mr. Boyd's particular needs while incarcerated at each of the named institutions. Each and every time Mr. Boyd had to file grievance after grievance before he was even placed in a cell that [was] partially ADA compliant and each and every time he complained he was met with retaliation and reprisals at each institution. See Dec. Of M. Boyd in Support of Mot. For Sum Jdgt and Exbs 5, 9, 10, 11, 12, 16, 17, 18 &20.  The CDC has a policy and practice of failing to reasonably accommodate Mr. Boyd's disability.  See Dec. Of M. Boyd In Sup. Of Plt.'s Mot. For Sum. Jdgt.

Pl.'s Opp'n re: CDC, Alameda, and PHS at 4:19-27.

For the reasons discussed above, this statement is woefully inadequate to defeat summary judgment. Defendants' motion is GRANTED.

### C.     Section 1983 claim

Plaintiff's § 1983 claim is based on Eighth Amendment claims of deliberate indifference to serious medical need and excessive force.  The CDC defendants argue that plaintiff cannot establish deliberate indifference to Boyd's serious medical needs because all of the expert witnesses – including plaintiff's own –

1    agree that defendants' treatment of Boyd fell within the standard of care.  The Court agrees.

2         As to plaintiff's excessive force claim, defendants argue that (1) the alleged force used by Nurse Blanks

3    was de minimis; (2) Nurse Sigales-Gorman and Officer Gorman used no force against Boyd, and at most

4    verbally harassed him; (3) all of the individual CDC defendants are entitled to qualified immunity and may not

5    be sued in their official capacities in any event; and (4) all claims against individual defendants who were

6    indirectly involved or merely investigated Boyd's inmate appeals should be dismissed.[7]

7         The Court finds that all of these bases are sufficient for summary judgment on the section 1983 claim.

8    Viewing the evidence in the light most favorable to plaintiff, it appears that plaintiff's deliberate indifference claim

9    is based on his treatment at DVI and CIM, as well as at Doctors Hospital.  At DVI, plaintiff states that he was

10   housed in the non-ADA compliant general population center, and at CIM, he was placed in a communicable

11   disease unit that was not ADA compliant, as well as in administrative segregation.  Plaintiff cites no evidence

12   for the latter claim about CIM, and for the conditions of Boyd's confinement at DVI she refers to "Exs 9, 10,

13   12, 16, 17, 18," which encompass hundreds of pages of deposition testimony and inmate grievances.  Pl.'s

14   Opp'n re: CDC, Alameda, and PHS at 7:18-19.  For the excessive force claims against Nurse Blanks, Nurse

15   Sigales-Gorman, and Officer Gorman, the Court agrees that, even assuming that they treated Boyd with the

16   hostility he describes, none of their conduct even comes close to force used "maliciously and sadistically for

17   the very purpose of causing harm."  Whitley v. Albers, supra, 475 U.S. at 320-21.  The factors to be applied

18   in assessing the reasonableness of the officers' conduct are: (1) the need for application of force, (2) the

19   relationship between the need for force and the force used; (3) the injury; and (4) whether force was used in

20   a good faith effort to restore discipline.  Id.  Here, Nurse Sigales-Gorman and Officer Gorman did not use any

21   force against or cause any injury to Boyd, and Nurse Blanks merely pushed Boyd's wheelchair out of the clinic.

22   In addition, there is simply no factual basis for the claims against the various additional defendants listed in

23   footnote 6, above.

24        Defendants' motion for summary judgment is GRANTED as to this claim.

25

26

27

28        [7] These defendants are: Steve Moore, Lori DiCarlo, Gail Lewis, Claude Finn, M.A. Hamilton, Officer
Watkins, Captain M.H. Reyes, Officer Hill, Sergeant Hill, Nurse Sigales-Gorman, and Dr. Jacques Hirschler.

United States District Court
For the Northern District of California

**D.      Section 1985 claim**

Defendants seek summary judgment on plaintiff's claim of a conspiracy to violate Boyd's civil rights, arguing that there are only conclusory allegations to support this claim. Boyd testified about a suspected conspiracy in 2000 between Officer Watkins and a cellmate to attack Boyd. As discussed above, this claim is barred by the one-year statute of limitations. Boyd also alleges a conspiracy orchestrated by Dr. Jacques Hirschler in 2001 to have him transferred to CIM instead of back to DVI when he left Doctors Hospital. According to Boyd, during a telephone conversation with Dr. Hirschler, Boyd felt that the nurses and officers were eavesdropping and whispering about "the plans," specifically "how [he] was going to be treated from that point on after they figured out how serious the infection was." Maiorino Decl., Ex. A at 625:20-626:17. These facts do not create a triable issue on plaintiff's claim of conspiracy under 42 U.S.C. § 1985(3) because they do not establish any overt act in furtherance of the conspiracy, or any injury to or deprivation of a right or privilege. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). Indeed, the "whispering" among nurses and officers does not demonstrate an agreement between Hirschler and others at all – nor do the "plans" suggest anything other than intent to provide Boyd with further medical treatment.

Defendants also argue, correctly, that plaintiff may not bring a § 1985 claim against various CDC defendants in their official capacities. This cause of action against Steve Moore, Lori DiCarlo, Gail Lewis, Claude Finn, M.A. Hamilton, Officer Watkins, Captain M.H. Reyes, Officer Hill, Sergeant Hill, Nurse Sigales-Gorman, Officer Gorman, Officer Casey, and Dr. Jacques Hirschler is DISMISSED to the extent that they are sued in their official capacities.

Defendants' motion for summary judgment is GRANTED as to this claim.

**E.      State law claims**

As a threshold matter, defendants argue that plaintiff's state claims should be dismissed because plaintiff did not properly present a timely claim before filing suit. Plaintiff was required to file claims with the Victim Compensation and Government Claims Board within six months of the alleged violations by the public entities and employees. Plaintiff argues that Cal. Gov. Code § 945.6(b) allows for the tolling of this six-month period while an individual is incarcerated and extends the period for six months after the date of release from

1    incarceration.

2           Gov. Code § 945.6(b) states:

3           When a person is unable to commence a suit . . . within the time prescribed in that subdivision
            because he has been sentenced to imprisonment in a state prison, the time limit for the
4           commencement of such suit is extended to six months after the date that the civil right to
            commence such action is restored to such person, except that the time shall not be extended
5           if the public entity establishes that the plaintiff failed to make a reasonable effort to commence
            the suit, or to obtain a restoration of his civil right to do so before [six months].
6
     Cal. Gov. Code § 945.6(b).
7
     Elsewhere, however, California law is clear that a plaintiff's imprisonment does not toll the statute of limitations
8
     for commencing a government tort claim action.  See C.C.P. § 352.1(b); Moore v. Twomey, 120 Cal. App.
9
     4th 910, 914 (2004) (noting that "[t]his is true notwithstanding the language contained in" Gov. Code §
10
     945.6(b), which "appears to lack any continuing vitality.")  In plaintiff's claim, she alleged multiple violations
11
     between January 27, 2001 and July 27, 2001, but did not serve the claim until February 26, 2002.[8]  The Board
12
     informed plaintiff that the claim had been deemed untimely and notified her of her right to seek leave to file a
13
     late claim.  Plaintiff did not pursue the claim further.  CDC Defs.' RJN, Ex. B.  Defendants contend that,
14
     because of this action by the Board and plaintiff's untimely claim, her opportunity to litigate the timeliness of her
15
     claim has passed.  The Court agrees.  Plaintiff's failure to file a timely claim requires a GRANT of summary
16
     judgment on her state claims against the CDC defendants.
17
            Even if plaintiff had filed a timely tort claim with the Board, her state claims must fail because there is
18
     no triable issue of fact on any of them.
19

20

21          **1.      Negligence**

22          Summary judgment is GRANTED as to the negligence claim because plaintiff has not established a

23   breach of any duty of care owed her by the CDC defendants.  Plaintiff does not address this claim at all in her

24   Opposition brief.

25
            **2.      Assault and battery**
26

27   _____

28          [8] Plaintiff's Notice of Claim and Claim for Money Damages is Exhibit A to the CDC defendants'
     Request for Judicial Notice, which the Court GRANTS.

Plaintiff's claims for assault and battery are apparently based on the conduct of Nurse Blanks, Nurse Sigales-Gorman, and Officer Gorman.  Summary judgment is GRANTED as to Nurse Sigales-Gorman and Officer Gorman because neither of these defendants either attempted to cause injury to plaintiff nor actually used physical force or violence against Boyd.  In fact, these defendants never touched him at all.  Maiorino Decl., Ex. A at 506:7-10; 507:7-9.  Nurse Blanks' use of force against Boyd consisted of the single incident where she "forced [him] out of the clinic, and . . . turned [his] chair around and pushed [him] out of the clinic."  Id. at 502:3-8.  This conduct does not amount to the torts alleged, and in any event plaintiff has not addressed this claim in her Opposition brief.  The Court GRANTS summary judgment on this cause of action.

### 3. Intentional infliction of emotional distress

Plaintiff's emotional distress claim fails because she has not shown that there was extreme and outrageous conduct.  Summary judgment is GRANTED on this claim.

### 4. Survival action

For the same reasons as discussed in Part II F, above, summary judgment is GRANTED on the survival action.

### 5. Section 17200

Defendants seek summary judgment on this claim on grounds that plaintiff has not shown any unlawful, unfair, or fraudulent business practice.  Plaintiff argues that she, like other individuals, has the right to bring a claim based on alleged unlawful conduct under section 17200 and California's Unruh Civil Rights Act.  While the Court agrees that plaintiff has standing to bring such a claim, and that her section 17200 claim might survive a motion to dismiss by defendants, on summary judgment she must bring forth evidence of a triable issue that an unlawful business practice exists.  This she has not done.  Defendants' motion is GRANTED as to this claim.

## V.  Defendant Prison Health Services, Inc.'s Motion for Summary Judgment

Defendant Prison Health Services, Inc. ("PHS") brings its motion for summary judgment on grounds

United States District Court
For the Northern District of California

26

that (1) the statute of limitations bars all claims against it, and (2) plaintiff's claims entirely lack factual support. Plaintiff's claims against PHS arise out of his incarceration at Santa Rita Jail from March 30, 2001 to May 15, 2001.

**A.      Statute of limitations**

Plaintiff brings the following claims against PHS: federal claims under the "ADA, Section 504," 42 U.S.C. § 1983, and 42 U.S.C. § 1985, and state law claims for negligence and negligent hiring, supervision and retention, emotional distress, a survival action, and a violation of Bus. & Profs. Code § 17200.[9]  Defendant argues that the one-year statute of limitations for state law personal injury claims bars all of plaintiff's claims against it.  According to PHS, the statute of limitations began to run on August 26, 2001, when Boyd was released from prison.  Therefore, plaintiff had until August 26, 2002 to sue PHS, but did not add this defendant to the complaint until March 28, 2003, seven months too late.  See First Am. Compl. ¶ 22, Docket # 36.

The limitations period for plaintiff's state law personal injury claims is one year.  Cal. Code Civ. Proc. § 340(3).[10]  Thus, plaintiff's claims for negligence and negligent hiring, supervision, and retention, and emotional distress must have been brought within one year of Boyd's release on August 26, 2001.  Section 1983 claims are also governed by the state statute of limitations for personal injury actions, see Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1135 (9th Cir. 2001) (en banc), as are claims brought under § 1985(3). See McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir. 1991).  The Ninth Circuit has assumed, though not decided, that a one-year limitations period applies to ADA claims, and has noted that most district courts have applied this limitations period to such claims.  See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002).  Rehabilitation Act claims are subject to a one-year statute of limitations. See Douglas v. Cal. Dep't of Youth Authority, 271 F.3d 812, 823 (9th Cir. 2001).

In her Opposition brief, plaintiff argues that, under Cal. Code of Civ. Proc. § 352.1, her federal claims

---

[9] The assault and battery claim against "Gormans, Burns, Blanks, Dutton, Wondaso, Casey and DOES" is apparently not brought against PHS.  Third Am. Compl. ¶¶ 102-103.

[10] Effective January 1, 2003, the statute of limitations for personal injury actions was extended to two years, but the two-year statute is only retroactive for claims brought by victims of the September 11, 2001 attacks.  Krupnick v. Duke Energy Morro Bay, 115 Cal.App.4th 1026, 1028 (2004).  Because plaintiff's claims accrued in 2001, they are subject to the one-year statute of limitations.

are subject to a two-year tolling period which entitles her to file suit within three years of Boyd's release.  See Pl.'s Opp'n re: CDC, Alameda County, and PHS at 2:11-18 ("In other words all claims with a one year statute of limitation was tolled for two years plus the one year for a total of three years in which to file an action.").

C.C.P. § 352.1 provides: "[i]f a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned . . . the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."  As defendants point out, this provision means that the tolling period may be up to a maximum of two years, but not that a plaintiff may add two years to the limitations period.  Therefore, the statute of limitations for plaintiff's claims was only tolled until Boyd's release on August 26, 2001.

Because PHS was not sued until March 28, 2003, the one-year statute of limitations bars the following claims: (1) the ADA/Section 504 claim; (2) the § 1983 claim; (3) the § 1985 claim; (4) the claim for negligence and negligent hiring, retention and supervision; (5) the claim for emotional distress; and (6) the "survival action."[11]  Plaintiff's § 17200 claim is not time-barred because that claim is subject to a four-year statute of limitations.  See Cal. Bus. & Profs. Code § 17208.

**B.     Lack of evidence supporting plaintiff's claims**

Even if these six of plaintiff's seven causes of action against PHS were not barred by the statute of limitations, they are factually unsupported, and plaintiff has not established a triable issue on any of her claims.

**1.     ADA/Section 504 claim**

PHS contends that it cannot be liable for an ADA or Rehabilitation Act claim because (1) it is not a public entity and (2) it receives no federal financial assistance.  Defendant reasons that plaintiff's unspecified ADA claim must be premised on Title II of that statute because Title I applies only to employment discrimination and Title III permits only injunctive relief and requires a probability of re-injury, which makes it unavailable to deceased persons.  The Court agrees that, because PHS is not a public entity and does not

---

[11] The survival action is brought "pursuant to 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.34."  Third Am. Compl. ¶ 107.  C.C.P. § 377.34 simply defines the scope of damages recoverable by a personal representative, and is not a separate cause of action.  In any event, since it is based on plaintiff's § 1983 claim, the statute of limitations would also be one year.

28

receive federal dollars, summary judgment must be GRANTED on this claim.

### 2.    Section 1983 claim

Defendant argues that there is no evidence of the "deliberate indifference" required for a § 1983 claim based on the Eighth Amendment.  Plaintiff's expert, Dr. Weinstein, testified that (1) PHS might have mistakenly prescribed antibiotics without first obtaining a wound culture; (2) insufficient showers and dressing changes might have extended the time the wound lingered; (3) PHS was negligent because it did not do a general exam of Boyd within two weeks of booking; and (4) PHS was negligent because it did not "push on" (only looked at) the wound.  In her Opposition, plaintiff provides the same lengthy excerpt from Dr. Weinstein as included in her summary judgment motion, regarding PHS' care of Boyd:

> not only did PHS institute a treatment regimen which was superficial, based on negligent and superficial examination, but compounded the problem by not doing the required two-week history and physical by a qualified medical examiner at which that might have come up again . . . Is there a reason, other than an ill-fitting pro[s]thesis, which was an assumption made at the facility, that this wound is there and doesn't heal?  So that's another thing, that PHS was negligent and did not meet its obligation under its own standards through NCCHC.

Boyd Decl., Ex. 8 (Weinstein Depo.) at 145:1-146:1.

Defendant argues that this testimony departs from plaintiff's original theory, which was that PHS was responsible for Boyd's original infection and the development of osteomyelitis.  Weinstein conceded at deposition that (1) PHS could not have caused an infection to Boyd's left stump or osteomyelitis because he already had an infection when he arrived at Santa Rita, and (2) Boyd never ultimately developed osteomyelitis. In addition, PHS argues that Weinstein's new opinions about its negligence are untimely because they were not disclosed in his expert report and are unfounded in any event.

Assuming arguendo that Dr. Weinstein's opinions are supported and admissible, the Court finds that they are insufficient to raise a triable issue regarding deliberate indifference.  Deliberate indifference requires a showing of both an official's knowledge of an inmate's substantial risk of serious harm and the official's disregard for that risk.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  Viewing Weinstein's testimony in the light most favorable to plaintiff, it does nothing to establish the subjective requirement, and he did not "speak to the state of mind of the individuals who provided care."  Boyd Decl., Ex. 8 at 136:23-137:2.  Therefore, summary judgment in favor of defendant is GRANTED as to this claim.

29

### 3.     Section 1985 claim

Defendant argues that plaintiff has presented no evidence of a conspiracy, and for the reasons outlined above, the Court agrees.  Summary judgment is GRANTED as to this claim.

### 4.     Negligence

Plaintiff does not address her negligence claim in her Opposition, and it is time-barred in any event. There does appear to be a genuine issue of material fact regarding this claim.  Defendant offers the opinion of its expert, who states that the treatment Boyd received from PHS was appropriate and within the standard of care.  Slabaugh Decl. ¶¶ 39, 42.   The expert report of Dr. Weinstein contains a contrary opinion: specifically, that although Boyd was appropriately screened when he entered the jail, see Boyd Decl., Ex. 7 at ¶ 6, PHS provided the following inadequate care:

> PHS never performed a 14 day complete medical history and physical as mandated by their protocols and by the Jail Health Standards of the National Commission on Correctional Health Care and the Standards for Health Services in Correctional Institutions of the American Public Health Association.  PHS did not follow adequately the progress of CKB's wound or collect serial temperature readings or cultures of the wound to direct care.  No physical exam was done other than observation of the wound, no documentation of the presence or absence of tenderness was made.  No laboratory studies were done to rule out general or contributory conditions that would slow healing or undermine CKB's health.  No investigation was done of the stump to rule out deeper disease.  PHS care was superficial and negligent and did not meet standards for health services in correctional institutions.

Id. at ¶ 8.

Because the parties have produced conflicting opinions of experts regarding whether PHS' conduct met the standard of care, there is a triable issue on this claim.  Nonetheless, summary judgment is appropriate because the claim was filed seven months after the statute of limitations had run.  Defendant's motion is GRANTED.

### 5.     Intentional infliction of emotional distress

For the same reasons that summary judgment is appropriate against other defendants on this claim, it is required here.  There is no triable issue on any element of this tort.  Defendant's motion is GRANTED.

### 6.     Survival action

For the same reasons as discussed in Part II F, above, summary judgment is GRANTED on the

survival action.

### 7.    Section 17200 claim

Defendant argues that this claim is factually unsupported because plaintiff has not shown that PHS had a business practice of discrimination and denying goods, services, and accommodations to African Americans and disabled persons.  For the same reasons as discussed above, the Court agrees that there is no triable issue of fact on this claim.

Defendant's motion is GRANTED.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for summary judgment and GRANTS defendants' motions for summary judgment. [Docket ##  183, 190, 202, 212, 218, 221]

**IT IS SO ORDERED.**

Dated: September 2, 2005

_____
SUSAN ILLSTON
United States District Judge